# STATE OF MICHIGAN

# COURT OF APPEALS

IONIA PUBLIC SCHOOLS,

UNPUBLISHED
May 12, 2016

Respondent-Appellee,

v

No. 325413
MERC
LC No. 00-000094

IONIA EDUCATION ASSOCIATION,

Charging Party-Appellant.

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Charging party Ionia Education Association ("the Association") appeals as of right the decision and order of the Michigan Employment Relations Commission ("MERC") that granted summary disposition in favor of respondent Ionia Public Schools ("the School") on the Association's claim that the School committed an unfair labor practice and granted summary disposition in favor of the School on its competing unfair labor practice charge against the Association. Because the Association engaged in an unfair labor practice by refusing to negotiate for an agreement that did not include prohibited subjects and the School's refusal to negotiate over these prohibited terms was not an unfair labor practice, we affirm.

The Association represents a bargaining unit of teachers and other professionals employed by the School. In June 2011, the Association and the School began negotiations for a successor collective bargaining agreement ("CBA"), as the current CBA was set to expire on August 25, 2011. On July 19, 2011, the Legislature gave immediate effect to 2011 PA 103, which amended the Michigan Public Employment Relations Act ("PERA"), MCL 423.201 *et seq*. Relevant to this case, 2011 PA 103 added several "prohibited subjects" of collective bargaining under MCL 423.215(3)(j)-(p). By statute, a public school employer and the employees' bargaining representative may not bargain over the prohibited subject identified in MCL 423.215(3), and these areas are instead "within the sole authority of the public school employer to decide." MCL 423.215(4).

After 2011 PA 103 took effect, the School identified approximately 45 provisions in the expiring CBA that involved prohibited subjects, and the School expressly informed the Association that it would not enter into a successor CBA that contained prohibited terms. The School sent the Association several package proposals, which omitted the identified provisions. However, the Association refused to enter into a successor CBA that did not contain the terms

-1-

identified by the School as prohibited under 2011 PA 103. The Association refused to discuss whether the terms at issue were prohibited subjects and the Association declined to make a written proposal. The Association took the position that, if the identified terms were prohibited subjects of bargaining, the parties could not bargain to remove them from the CBA and these terms should instead become part of the successor CBA automatically.

The parties filed competing charges that the other engaged in unfair labor practices by negotiating in bad faith. The parties then filed competing motions for summary disposition. Ultimately, the MERC granted summary disposition in favor of the School on its claim that the Association committed an unfair labor practice, and granted summary disposition in favor of the School on the Association's competing claim that the School committed an unfair labor practice. Briefly summarized, the MERC reasoned that the School had no obligation to bargain over the prohibited subjects at issue; and that, in contrast, the Association failed to bargain in good faith by refusing to discuss whether the topics were prohibited and by insisting on the inclusion of the prohibited subjects in the successor CBA. The Association now appeals to this Court.

On appeal, the Association argues that the MERC erred by granting summary disposition to the School and denying the Association's motion for summary disposition. According to the Association, nothing in PERA prevents the parties from entering into an agreement which contains prohibited subjects; rather, the provisions should automatically remain in the contract and, if they involve prohibited subjects, the contract provisions relating to prohibited subjects would simply be unenforceable. The Association also maintains that it did not agree to the School's assessment of whether the issues were "prohibited subjects" and that the School cannot unilaterally decide which matters are prohibited subjects. For these reasons, the Association contends that the School engaged in an unfair labor practice by unilaterally excluding terms from the proposed CBA and that the Association did not engage in an unfair labor practice by refusing to acquiesce to the School's treatment of these subjects. In addition, the Association contends that any conclusion that it failed to bargain in good faith is premature because the parties were still in the bargaining process and had not yet bargained to an impasse.

"In a case on appeal from the MERC, the MERC's factual findings are conclusive if supported by competent, material, and substantial evidence on the record." *Macomb Co v AFSCME Council 25*, 494 Mich 65, 77; 833 NW2d 225 (2013) (internal quotation marks and citation omitted). "Legal questions, which include questions of statutory interpretation and contract interpretation, are reviewed de novo." *Id.*

PERA governs the relationship between public employees and governmental agencies. *Id.* at 77-78. As a general matter, under PERA, parties are required to bargain in "good faith," meaning that they must be "actively engaged in the bargaining process with an open mind and a sincere desire to reach an agreement." *Id.* at 79 (citation omitted). See also MCL 423.215(1). More specifically, the obligations of a public school employer and its employees, with respect to bargaining over "prohibited subjects," were recently discussed by this Court in *Calhoun Intermediate Ed Ass'n MEA/NEA v Calhoun Intermediate Sch Dist*, ___ Mich App ___; ___

-2-

NW2d \_\_\_ (2016) (Docket No. 323873).[1]  As in the present case, the parties in that case were in the process of bargaining for a successor CBA and, even after the school district identified prohibited subjects that it would not include in the CBA, the association insisted on the inclusion of prohibited terms in the successor CBA.  *Id.*, slip op at 1-3.  Under these circumstances, this Court held that, while parties may discuss prohibited subjects, a party violates its obligation to bargain in good faith by insisting on maintaining prohibited language in a successor CBA.  *Id.*, slip op at 5-6.  More fully, this Court explained:

> [A]lthough the Association was free to "discuss" the prohibited subjects in this case, once the District made it clear that it did not want any provisions pertaining to the prohibited subjects to be included in the successor CBA, the Association had no authority to continue to insist that the language or any modification of it was maintained in the successor CBA.  The District made its position clear . . . when it submitted a revised comprehensive proposal removing the provisions pertaining to prohibited subjects from the CBA and providing express notice that it would not sign a successor agreement containing provisions pertaining to the prohibited subjects.  Thereafter, the Association presented package proposals containing the disputed language . . . . In doing so, the Association crossed the line from discussing a prohibited subject, which it is allowed to do, and began bargaining over it in spite of the District's clear statements that it would not include such language in the successor CBA.  We conclude, as did the MERC, that the Association's insistence on maintaining prohibited language in the successor CBA is an act of bad faith.  [*Id.* at 5-6.]

In concluding that the association failed to bargain in good faith, this Court recognized that the subjects identified in MCL 423.215(3) are "prohibited subjects" within the district's sole authority, and this Court expressly rejected the association's assertion that prohibited terms can somehow be "rolled over" into a successor CBA, against the school district's wishes, without bargaining.  *Id.*, slip op at 5 & n 5.  Finally, this Court also rejected the argument that an employer had to wait until the parties bargained to an impasse before filing an unfair labor practice charge regarding prohibited subjects, reasoning that such a requirement would essentially allow the employee to demand that the employer bargain over the prohibited subjects. *Id.* at 6.  Given these conclusions, this Court affirmed the MERC's finding that the association committed an unfair labor practice by insisting on the inclusion of prohibited terms in the CBA. *Id.*

Following the reasoning in *Calhoun Intermediate Ed Ass'n MEA/NEA*, it becomes clear that the Association's arguments in this case are without merit.  That is, the subjects identified in MCL 423.215(3) are "prohibited subjects" within the School's sole authority.  See MCL 423.215(4); *Calhoun Intermediate Ed Ass'n MEA/NEA*, slip op at 5.  The School was free to exclude these prohibited subjects from the successor CBA and, once the School informed the

---

[1] As a published decision of this Court, *Calhoun Intermediate Ed Ass'n MEA/NEA* constitutes binding precedent.  MCR 7.215(C)(2); MCR 7.215(J)(1).

Association of its decision to exclude these subjects, the Association had no right to demand that these terms automatically rollover into the successor CBA. See *Calhoun Intermediate Ed Ass'n MEA/NEA*, slip op at 5-6 & n 5. The Association's categorical refusal to enter into an agreement without these terms and its insistence that the prohibited terms could not be removed from the CBA constituted an act of bad faith. Cf. *id.* Likewise, there is no merit to the contention that the School had to bargain to an impasse before the Association could be found to have bargained in bad faith by demanding inclusion of prohibited subjects in the CBA. *Id.*, slip op at 6.

While we find that *Calhoun Intermediate Ed Ass'n MEA/NEA* largely resolves the parties' dispute, we note that the present case differs slightly from *Calhoun Intermediate Ed Ass'n MEA/NEA* in relation to the question of whether the topics at issue were "prohibited subjects" under MCL 423.215(3). In particular, in *Calhoun Intermediate Ed Ass'n MEA/NEA*, slip op 1, the parties agreed that MCL 423.215(3) applied to the issues in dispute, while in the present case the Association maintains that it never concurred in the School's assessment of whether the contested CBA provisions involved prohibited subjects under MCL 423.215(3). However, on the facts of this case, this distinction does not demand a different result than that reached in *Calhoun Intermediate Ed Ass'n MEA/NEA*.

First, the Association offers no evidence or argument—either in this Court or before the MERC—to suggest that the CBA provisions at issue did not actually involve "prohibited subjects." Absent supporting authority and meaningful briefing of this issue, the matter is abandoned, *Yee v Shiawassee Co Bd of Com'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002), and we can find no basis to disturb the MERC's conclusion that the subjects were "prohibited" under MCL 423.215(3). Second, in asserting that it never agreed to the School's assessment of which provisions contained "prohibited subjects," the Association wholly disregards the significant fact that it had the opportunity to discuss this topic with the School and that it repeatedly refused to do so. That is, the Association's repeated refusal to discuss which CBA provisions contained "prohibited subjects" only serves to underscore the bad faith with which the Association approached bargaining with the School. As aptly explained by the MERC:

> [T]he [Association] does not deny that, on several occasions, the [School] sought to discuss with it whether it agreed with the [School] that the provisions identified by the [School] apply to prohibited subjects of bargaining. The [Association] does not deny that it declined to discuss whether the provisions that the [School] objected to including in the successor agreement were, in fact, prohibited subjects of bargaining. . . .
>
> ***
>
> The [Association's] repeated refusal to discuss that issue as well as its baseless insistence that provisions from the expired contract automatically carried over into the new contract indicate that the [Association] had neither an open mind nor a sincere desire to reach agreement. In short, the [Association's] actions were simply an attempt to delay and obfuscate the bargaining process.

In sum, we agree with the MERC that the Association's refusal to discuss which topics were prohibited and its meritless insistence on rolling prohibited provisions over into the

-4-

successor CBA constituted an unfair labor practice. In contrast, the School acted well within the bounds of good faith bargaining by identifying prohibited subjects, inviting a discussion of whether these topics were prohibited, and ultimately refusing to enter into an agreement containing subjects prohibited under PERA. For these reasons, the MERC properly granted summary disposition to the School and denied the Association's motion for summary disposition.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray